UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Nicole Paxton, Individually, <br> and as P.R. of the Estate of <br> Gerald Blaine Metheny, Deceased <br> 102 Grindstone Drive, <br> Winchester, VA 22602, <br><br> Plaintiffs, <br><br> v. <br> Washington Hospital Center Corporation <br> d/b/a The Washington Hospital Center <br> 110 Irving Street, N.W. <br> Washington, D.C.  20010, <br><br> and <br><br> Steven W. Boyce, M.D. <br> 4223 Leland Street <br> Chevy Chase, Maryland  20815 <br><br> Defendants. | **SECOND AMENDED COMPLAINT** <br><br><br><br> Case No. 13-111 (JEB) |

**SECOND AMENDED COMPLAINT**
**(Wrongful Death and Survival Action)**

COMES NOW the Plaintiff, Nicole Paxton, Individually, and as P.R. of the Estate of Gerald Blaine Metheny, deceased, by and through their attorney, Michael M. Wilson, Christopher M. FitzPatrick, Esquire from Joseph, Greenwald and Laake, P.A. and represents to this Honorable Court as follows:

**(Jurisdiction and Parties)**

Exhibit 5

1

1. Plaintiff, Nicole Paxton, is a resident and domiciliary of the Commonwealth of Virginia, as was Gerald Blaine Metheny with his wife Carole Metheny. Nicole Paxton resides at 102 Grindstone Dr., Winchester, VA 22602. The Estate of Gerald Blaine Metheny was created by the Circuit Court of Frederick County, Virginia as Court File Number 120000097, and Plaintiff Nicole Paxton is the Personal Representative of the Estate of Gerald Blaine Metheny and the natural daughter of Plaintiff's decedent Gerald Blaine Metheny. The Estate of Gerald Blaine Metheny would also be considered a domiciliary and resident of the Commonwealth of Virginia.

2. Defendant Washington Hospital Center Corporation d/b/a The Washington Hospital Center (hereinafter referred to as WHC) is a hospital with its principal place of business located at 110 Irving Street, N.W., Washington, D.C., 20010.

3. Defendant Steven W. Boyce, M.D., was at all times pertinent hereto a physician licensed to practice medicine in the District of Columbia. Defendant Steven W. Boyce, M.D. had a doctor-patient relationship with Plaintiff's decedent, Gerald Blaine Metheny. Upon information and belief, Defendant Steven W. Boyce, M.D. is a resident and domiciliary of Maryland at 4223 Leland Street, Chevy Chase, Maryland, 20815.

4. All acts and/or omissions relating to Plaintiff's claims against Defendants WHC and Steven W. Boyce, M.D. took place within the District of Columbia.

5. Pursuant to 28 U.S.C. Section 1391(a)(2), the proper venue for this action is Washington, District of Columbia, as a substantial part of the events or omissions giving rise to the claims against the Defendant occurred in the District of Columbia and Defendant WHC has its principal place of business in the District of Columbia.

6. The matter in controversy exceeds the sum of $75,000.00. Gerald Blaine Metheny suffered a wrongful death and a great deal of pain and suffering prior to his death. The survival action and the wrongful death claim are both substantial and well in excess of the sum of $75,000.

7. As the matter in controversy exceeds the sum of $75,000.00, and the Plaintiff and all Defendants are diverse as set forth in 28 U.S.C. Section 1332, this Honorable Court has diversity jurisdiction with respect to this action.

8. Notice pursuant to D.C. Code Section 16-2802 was provided on July 17, 2012 by service upon Defendants WHC and Steven W. Boyce, M.D.

## COUNT 1
### Wrongful Death

9. Plaintiff's decedent Gerald Blaine Metheny presented to Defendant WHC on or about May 6, 2011.

10. On May 19, 2011, Dr. Steven Boyce, and/or one or more physicians under his supervision, and/or one or more physicians employed by Defendant WHC performed surgery on Gerald Blaine Metheny, to implant a Left Ventricular Assist Device (LVAD) as a bridge to heart transplant. This was intended to be a temporary device, as Mr. Metheny was considered "an excellent candidate" for a heart transplant. Mr. Metheny's family was advised that the LVAD would be the best course of treatment to preserve all other organs and improve his quality of life.

11. Anesthesia was started that morning at 7:35 a.m. The first incision was performed at 8:39 a.m., and surgery was completed at 2:05 p.m. During the surgery, a total of four chest tubes were placed, two in the mediastinum and one in each pleural space.

12.     During the LVAD procedure, at 10:59 a.m. the Perfusionist, Asser Faaek Guirgues who assisted Steven Boyce, M.D during this procedure wrote the word "Emergency" in the chart. At that time, the Perfusionist alerted the defendant Steven Boyce, M.D. of this dangerous situation that endangered the life of decedent, Gerald Metheny. The defendant, Steven Boyce at that time instructed the Perfusionist, Asser Faaek Guirgues to "go off of Bypass". The Patient was "off of Bypass" for an extremely significant and dangerous period of time between 10:59 a.m. and 11:06 a.m. which caused significant neurological injury and an anoxic brain injury to the patient.

13.     Furthermore, during the surgical procedure chest tubes were inserted into the right pleural space by the surgical Assistant Terry Barzanti and as a result, the intercostal artery and/or vein was inadvertently perforated.  As a standard procedure, the surgeon appears not to have looked at the under surface of the chest to ensure that there was no bleeding after the chest tube insertion.  The torrential bleeding was not detected, in spite of evidence by unstable hemodynamics and lab findings (a steady decline in O2 stats, MAP, CVP, and hemoglobin; and the amount of pressor medications and blood products required just to keep the patient hemodynamically stable).

14.     While still on the operating table, a total of six units of blood, seven units of fresh frozen plasma, six units of platelets, albumin, and 5000 ml of crystalloids were given to the patient. Lactated ringers solution, norepinephrine, epinephrine, vasopressin and isoproterenol were also provided to maintain stable blood pressures.  In spite of these medications, the patient's pH decreased from 7.44 down to 7.12 while his $O_2$ saturations steadily dropped. Also, lactic acid levels steadily rose from a normal level of

1.0 to 9.1 while still on the operating table (after surgery, in the Cardiovascular Recovery Room with the bleeding unrecognized and unchecked, it rose as high as 16.8). Elevated lactic acid levels are a marker of hypoxia (decreased organ perfusion) and metabolic acidosis, due to circulatory failure. Central venous pressure (CVP) readings ranged from 24 to a low of 12, with Mean arterial pressure (MAP) readings ranging from 63 down to 18. Hemoglobin counts dropped from 8.6 down to 6.1.

15. These findings, individually, and in combination, are an indication of bleeding. These labs accurately reflect a situation in which Mr. Metheny was bleeding to death – not because of Mr. Metheny's heart condition, and not as an expected consequence of the surgery, but because of the unintended entry into a critical blood vessel during the insertion of a chest tube.

16. Despite the ongoing bleeding, the patient was moved out of the operating room to the Cardiac care unit. The source of the ongoing bleeding was never searched and ascertained as to why the right chest tube was putting out bright red blood was never questioned.

17. After surgery, Mr. Metheny was moved to the Cardiovascular Recovery Room (CVRR), where the attending physician noted that "there is bleeding from the right pleural chest tube" and there was "concern for traumatic chest tube placement" with "massive pleural bleeding" apparent. There was noted to be drainage of "greater than 500 ml/hr from right and left pleural chest tubes." Another four units of packed red blood cells (PRBC), four units of fresh frozen plasma (FFP), six units of platelets (PLTs), and cryoprecipitate were given in the CVRR in an attempt to stabilize Mr. Metheny. Lactic acid levels elevated to 14.7, with a pH of 7.21, indicating severe hypoxia, severe

metabolic acidosis and poor perfusion of the brain and other organs. Urinary output during this time of significant administration of volume-expanding fluids and medication meant to elevate blood pressure was only 40 ml, another indication of cardiogenic and hemorrhagic shock. The CVRR physician quickly suspected traumatic chest tube placement. A chest X-ray and ultrasound indicated large amounts of blood in the right lung, confirming his concerns. For the first approximate two hours, the surgeon Dr. Boyce did not see the patient and was not available. After every open heart surgery procedure, the surgeon is obligated to be around in case of an unexpected emergency, such as bleeding. Dr. Boyce was at some point notified and Mr. Metheny returned to the OR at 16:20 (almost two hours after it was noted that he had a major bleed from a traumatic chest tube placement during the first surgery). By now the patient was in multiorgan failure and showing signs of DIC from the massive amounts of blood transfusion and related products.

18.     Mr. Metheny's second surgery began at 4:51 p.m., almost two hours after his massive pleural bleeding was noted. Plaintiff's decedent suffered severe brain damage from blood loss and impairment of perfusion of his brain.

19.     During the second surgery, another seven units of PRBC, six units of PLTs, twenty units of cryoprecipitate and 1,000 ml of lactated ringers were administered to maintain Plaintiff's decedent during this surgery. Mr. Metheny's lactic acid levels rose to 16.8, with pHs of 7.18-7.32 and CVP readings ranging from 5-15. Surgery ended at 5:55 PM, with return to the CVRR at 6:23 PM.

20.     Mr. Metheny was heavily medicated after the second surgery. Several post-operative sedation "holidays" were attempted. During these post-operative

sedation holidays, Mr. Metheny experienced conscious pain and suffering as evidenced by his interaction with family members. The opinion was that prolonged hypoxia and prolonged metabolic acidosis caused an anoxic brain injury as a result of the cardiogenic/hemorrhagic shock during the first surgery, when the intercostal artery/vein was lacerated as a result of the traumatic chest tube insertion.

21.     Gerald Blaine Metheny died on May 30, 2011. His death certificate states that he died as a result of hemorrhagic shock.

22.     Defendants Steven W. Boyce, M.D. and WHC, acting by and through their agents, servants, employees, and apparent agents, departed from applicable standards of medical care in and were negligent in the following manner:

(a)     By allowing air to enter the arterial line during bypass. As a result the Cardiac Surgeon, the defendant Steven W. Boyce ordered the Perfusionist Aeer Faaek Faaek Guirgues to go off of by pass a 34 degrees between 10:59 a.m. and 11:06 a.m. this created a dangerous and life threatening situation.

(b)     Failing to maintain Mr. Metheny on continuous cardiopulmonary bypass during the LVAD implantation.

(c)     Failing to take the appropriate measures that would have prevented the sudden discontinuation of cardiopulmonary bypass.  The interruption of bypass at an almost normal body temperature for 10 minutes caused Mr. Metheny to sustain an anoxic brain injury.

(d)     Dr. Boyce did not document or communicate the significant events of the discontinuation of by pass to his medical colleagues or to Mr. Metheny's family members, and instead implied that an optimal outcome could be expected.

7

(e) By cutting Mr. Metheny's intercostal vessel during insertion of the chest tube.

(f) By failing to note that event as a possible cause of Mr. Metheny's condition during surgery;

(g) By failing to timely recognize that the bleeding that occurred after surgery in the recovery room was due to a mechanical problem (i.e bleeding from an injured vessel in the chest, and that Mr. Metheny should have returned to the operating room.

(h) Failing to repair the injured blood vessel while Mr. Metheny was still in the operating room during the first surgery;

(i) Failing to notice Mr. Metheny's deteriorating condition peri- and immediately post-operatively;

(j) Failure to re-explore the wound in a timely fashion;

(k) Failure to provide full and adequate Informed Consent for the LVAD Implantation; and,

(l) Defendants and their agents may have been negligent in other ways.

23. As a direct and proximate result of the aforesaid negligence and failure to obtain informed consent, Gerald Blaine Metheny suffered a wrongful death that was preventable. As a result of the wrongful death, the Estate of Gerald Blaine Metheny and his wife and daughter have suffered such damages as are recognized under District of Columbia law pertaining to Wrongful Death actions. These damages may include, but not be limited to, funeral expenses, medical bills, pecuniary loss, emotional distress,

loss of society, care, assistance, advice, and consortium over the duration of the joint lives of Gerald Blaine Metheny and Carole Metheny and Nicole Paxton.

WHEREFORE, Plaintiff Nicole Paxton, Individually, and as P.R. of the Estate of Gerald Blaine Metheny, demands judgment against Defendants Washington Hospital Center Corporation d/b/a The Washington Hospital Center for compensatory damages in the wrongful death action in the full amount of Fifteen Million Dollars ($15,000,000.00), plus interest and costs incurred.

## COUNT 2
## Survival Action

24. The allegations of Paragraphs 1 through 23 are re-alleged as though fully set forth herein.

25. As a direct and proximate result of the aforesaid negligence and failure to obtain appropriate informed consent, Gerald Blaine Metheny suffered damages, included but not limited to, the following:

    (a) Severe conscious physical pain;

    (b) Medical and hospital bills; and

    (c) Such other damages as are recognized under District of Columbia law pertaining to survival actions.

26. Plaintiff's decedent is requesting punitive damages in this case against Defendant Steven W. Boyce only because the circumstances of this case demonstrate gross negligence, outrageous medical behavior, reckless indifference to the rights of Mr. Metheny, and willful and wanton disregard of the rights and best interests of Mr. Metheny, who was completely helpless at the time and dependent upon Dr. Steven W. Boyce.

In particular, Dr. Boyce was grossly negligent and recklessly indifferent to the rights of Mr. Metheny with respect to ways including, but not limited to, the following:

(a) failing to recognize obvious signs that his patient on the Operating Room table was bleeding;

(b) failing to explore for and locate the source of the bleeding so that the laceration could be repaired in a timely fashion;

(c) sending Mr. Metheny to recovery while unstable due to torrential bleeding;

d) failing to be available to return to the Operating Room and treat Mr. Metheny for over 2 hours; and

(e) in other ways.

Additionally, the requisite state of mind for punitive damages may be inferred from all the facts and circumstances of the case. In this case, Dr. Steven W. Boyce knew or should have known of signs and symptoms that Mr. Metheny was experiencing bleeding. However, he failed to explore for the source of the bleeding; sent the patient out of the operating room, and was unavailable to return to treat his patient for two hours. This constituted gross negligence, willful misconduct, and abandonment of the patient. These facts can be used by the jury to determine Dr. Boyce's state of mind, which would be a question of fact for the jury.

Experts retained by counsel for the Plaintiff have advised that the actions of Dr. Steven Boyce in ignoring the signs and symptoms of bleeding, failing to explore for the cause of the bleeding, sending the patient out of the operating room with signs and symptoms of bleeding, and failing to be available for two hours to attend to his patient

who was bleeding to death does constitute gross negligence, and willful and wanton indifference to the rights of the patient sufficient to support a jury award of punitive damages in favor of the estate of Mr. Metheny.

WHEREFORE, Plaintiff Nicole Paxton, Individually, and as P.R. of the Estate of Gerald Blaine Metheny, demands judgment against Defendants Washington Hospital Center Corporation d/b/a The Washington Hospital Center and Steven W. Boyce, M.D. for compensatory damages in the survival action in the full sum of Five Million Dollars ($5,000,000.00), and also demands judgment against Steven W. Boyce, M.D. only for punitive damages in the survival action in the full sum of Ten Million Dollars ($10,000,000.00), plus interest and costs incurred.

Date: April 29, 2014               Respectfully submitted,

/s/ Michael M. Wilson
Michael M. Wilson, Esquire
D.C. Bar No. #941674
U.S. Court of Appeals
for the District of Columbia #30702
1120 19th Street, N.W. Suite LL-11
Washington, D.C.  20036
(202) 223-4488
Fax: (202) 280-1414
Email:  wilson@wilsonlaw.com

/s/ Christopher M. FitzPatrick
 Christopher M. FitzPatrick, Esquire
DC  Bar No. 479917
Joseph, Greenwald & Laake, P.A.
6404 Ivy Lane Suite 400
Greenbelt, Maryland 20770
(301) 220-2200
Fax (301) 220-1214

Counsel for the Plaintiff

**JURY DEMAND**

Plaintiff demands a trial by jury as to all issues so triable.

Date: April 29, 2014				Respectfully submitted,

/s/ Michael M. Wilson
Michael M. Wilson, Esquire
D.C. Bar No. #941674
U.S. Court of Appeals
for the District of Columbia #30702
1120 19th Street, N.W. Suite LL-11
Washington, D.C. 20036
(202) 223-4488
Fax: (202) 280-1414
Email: wilson@wilsonlaw.com


/s/ Christopher M. FitzPatrick
Christopher M. FitzPatrick, Esquire
DC Bar No. 479917
6404 Ivy Lane Suite 400
Greenbelt, Maryland 20770
(301) 220-2200
Fax (301) 220-1214
Email: cfitzpatrick@jgllaw.com

Counsel for the Plaintiff